LUCIA URIZAR-MOTA; SERGIO REYES, individually and
p.p.a. of S.R., W.R. and G.R.; DELMY REYES; S.R.; W.R.; G.R.,
Plaintiffs-Appellees,

v.

UNITED STATES,
Defendant-Appellant,

JOHN and/or JANE DOE, M.D.; JOHN DOE CORPORATION,
Defendants.

_____

ON APPEAL FROM ENTRY OF JUDGMENT
BY THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
_____

REPLY BRIEF FOR THE UNITED STATES
_____

SARA MIRON BLOOM
First Assistant United States Attorney

KEVIN M. BOLAN
LAUREN S. ZURIER
Assistant United States Attorneys
One Financial Plaza, 17th Floor
Providence, Rhode Island 02903
(401) 709-5000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

ARGUMENT .........................................................................................1

I.  The Reyes Plaintiffs failed to provide the district court with information sufficient to satisfy the FTCA's exhaustion requirement. ...................................................................................1

II.  Plaintiffs supply no evidence or authority to cure the district court's error in awarding Urizar-Mota lost-wages damages that she never sought and whose calculation the trial record does not support. ............................................................................................8

III.  Plaintiffs' opposition arguments fail to negate the district court's errors concerning causation and its resulting damage awards. ....................12

    A.  No record evidence supports the district court's conclusion that Urizar-Mota's tumor could have been treated without surgery. ..........................................................................12

    B.  No competent evidence supports the district court's conclusions about the risks posed by delayed surgery.......................14

    C.  In the absence of any expert testimony about Urizar-Mota's medical expenses, the district court clearly erred in awarding them. ...............................................................................17

IV.  Plaintiffs' appellate arguments reinforce the clear error of the district court's standard-of-care findings.......................................................19

CONCLUSION.....................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................22

CERTIFICATE OF SERVICE ...............................................................22

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Almonte v. Kurl*,
    46 A.3d 1 (R.I. 2012)......................................................................13

*Birbara v. Locke*,
    99 F.3d 1233 (1st Cir. 1996)....................................................9, 12

*Boyce v. United States*,
    942 F. Supp. 1220 (E.D. Mo. 1996) ........................................3, 5

*Bruno v. Caianiello*,
    121 R.I. 913, 404 A.2d 62 (1979).................................................11

*Burke v. Veolia Energy Co.*,
    No. 16-cv-5559, 2017 WL 432536 (E.D. Pa. Feb. 1, 2017) .....................3, 6

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)..........................................................................1

*Coska v. United States*,
    114 F.3d 319 (1st Cir. 1997).............................................................1

*Dukert v. United States*,
    No. 14-cv-506, 2016 WL 10721258 (D.N.M. Jan. 5, 2016) .........................5

*DuPont v. United States*,
    980 F. Supp. 192 (S.D. W. Va. 1997) ...........................................5

*Dynamic Image Techs., Inc. v. United States*,
    221 F.3d 34 (1st Cir. 2000)................................................. 1, 4, 7

*GAF Corp. v. United States*,
    818 F.2d 901 (D.C. Cir. 1987).....................................................5, 6

*Glendale Fed. Bank, FSB v. United States*,
    39 Fed. Cl. 422 (1997).....................................................................12

*Hardiman v. United States*,
    752 F. Supp. 52 (D.N.H. 1989) ....................................................5

*Kurczy v. St. Joseph Veterans Ass'n*,
    713 A.2d 766 (R.I. 1998)..............................................................18

*Lima v. Holder*,
    758 F.3d 72 (1st Cir. 2014)..................................................9, 12

*Loper v. United States*,
    904 F. Supp. 863 (N.D. Ind. 1995) ..................................5

*Lopez v. United States*,
    758 F.2d 806 (1st Cir. 1985)..................................................5, 7

*Pan v. Gonzalez*,
    489 F.3d 80 (1st Cir. 2007)..................................................9

*Rodríguez v. Mun. of San Juan*,
    659 F.3d 168 (1st Cir. 2011)..................................................8, 9

*Saccuci v. United States*,
    No. 07-cv-1227, 2008 WL 11338797 (D. Ariz. June 19, 2008) .................2, 4

*Santiago-Ramirez v. Sec'y of Dep't of Def.*,
    984 F.2d 16 (1st Cir. 1993).................................. 1, 6, 7

*Town of Portsmouth v. Lewis*,
    813 F.3d 54 (1st Cir. 2016)..................................................8, 10

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990)..................................................9

*Worsley v. Corcelli*,
    119 R.I. 260, 377 A.2d 215 (1977)..................................................11

<u>**STATUTES**</u>

28 U.S.C. § 2401(b) ..................................................7

28 U.S.C. § 2675 ..................................................6

28 U.S.C. § 2675(a) .................................. 1, 4-7

9 R.I. Gen. Laws § 9-1-47..................................................8

## RULES AND REGULATIONS

Fed. R. Civ. P. 54(c)..................................................................................................10

28 C.F.R. § 14.9(b) ..................................................................................................3

## ARGUMENT

**I.    The Reyes Plaintiffs failed to provide the district court with information sufficient to satisfy the FTCA's exhaustion requirement.**

It is well-established in this Circuit that an individual attempting to exhaust her remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), must provide the agency with "sufficient information for the agency to investigate the claims." *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19 (1st Cir. 1993). It is also settled that this Court takes a "flexible approach" to the FTCA's notice requirement. *Id.*

But it is likewise beyond dispute that a claimant's presentation of an adequate administrative claim is a nonwaivable jurisdictional precondition to suing in federal court. *Id.* at 18. The test for deciding whether sovereign immunity has been waived is "stringent": the waiver must be "unmistakably clear," and the courts must "indulge every reasonable presumption against" waiver. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675, 678, 682 (1999); *see also, e.g.*, *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 39 (1st Cir. 2000) (stating government's waiver of sovereign immunity "must be strictly construed").

The only way to reconcile the Court's flexible approach to the issue of notice with the strict construction that the FTCA's waiver of sovereign immunity requires is to dismiss FTCA claims when information "essential" to sufficient notice of the claim is "missing" altogether. *Coska v. United States*, 114 F.3d 319, 323 (1st Cir. 1997); *see also, e.g.*, *Dynamic Image Techs*, 221 F.3d at 40 (The Court's interpretation of FTCA's notice-of-claim requirement "attempt[s] to achieve a balance

. . . [between] strictures of the law[] . . . [and] Congress['s intent not] . . . to shield the federal fisc behind an impenetrable thicket of lawyerly technicalities.").

The Standard Form 95 ("SF-95") and Attorney Letter (collectively, the "Administrative Claim") that Lucia Urizar-Mota ("Urizar-Mota") submitted to the Department of Health & Human Services ("HHS") omitted information necessary to put the government on notice of the Reyes Plaintiffs' claims. [G.App.1 75-76, 78-82].[1] The Administrative Claim did not identify any Reyes Plaintiff by name, did not indicate how many potential claimants there were, lacked factual information about their potential claims, and omitted any sum certain that they sought. [G.App.1 75-76, 78-82].

The Attorney Letter filled none of those gaps. [G.App.1 78-82]. Its reference to Urizar-Mota's diminished "ability to care for her younger children," [G.App.1 81], implied only that she sought damages for herself for such limitations, not that her "younger children" were pursuing their own loss-of-consortium claims. *See, e.g.*, *Saccuci v. United States*, No. 07-cv-1227, 2008 WL 11338797, at *5-6 (D. Ariz. June 19, 2008) (dismissing loss-of-consortium claims made by claimant's wife, despite claimant's administrative claim for loss of "Consortium of Wife," given wife's failure to submit her own administrative claim or sign husband's administrative claim).

---

[1] The government cites to its record appendix as "G.App.1 __," its Addendum as "G.Add. __," its opening brief as "OB __," Plaintiffs'-Appellees' responsive brief as "RB __," and Plaintiffs-Appellees' supplemental appendix as "Appellees' App."

Urizar-Mota reinforced to HHS that she was pursuing damages solely on her own behalf by signing the SF-95 on her own behalf and not as the representative of her minor children. [G.App.1 75]. She also sought $20 million in damages without specifying that any of that total should be attributed to the injuries of any other potential claimants. [G.App.1 75-76, 78-82]. And her failure to break down the lump-sum damages claim into component parts is significant for purposes of notice:

> [E]ven if the claimed amount in fact includes the loss of consortium damages, the agency cannot assess realistically the scope of its liability if it lacks notice that the sum certain listed on a claim represents the damages asserted by multiple claimants and cannot discern the relative size of each person's claim for damages.

*Burke v. Veolia Energy Co.*, No. 16-cv-5559, 2017 WL 432536, at *4 (E.D. Pa. Feb. 1, 2017) (internal quotation marks and citation omitted).

HHS underscored its understanding that Urizar-Mota was the sole claimant when, in denying her Administrative Claim, HHS referred to Urizar-Mota as the only claimant. [G.App.1 84]. The Reyes Plaintiffs had the right to ask HHS to reconsider its decision and, had they done that, they would have had the opportunity to provide HHS within additional information notifying the agency that there might have been more claimants involved than HHS originally understood. *See* 28 C.F.R. § 14.9(b).[2] But by failing to avail themselves of this right, the Reyes Plaintiffs waived it. *Compare, e.g.*, *Boyce v. United States*, 942 F. Supp. 1220, 1223-24 (E.D. Mo. 1996) (notice sufficient where, in response to agency's letter to counsel

---

[2]  Asking that HHS reconsider its decision would have tolled the Reyes Plaintiffs' deadline for filing suit "until 6 months after the filing of [the] request for reconsideration." 28 C.F.R. § 14.9(b).

asking for information supporting wife's potential loss-of-consortium claim, wife submitted affidavit providing facts supporting claim), *with, e.g.*, *Saccuci*, 2008 WL 11338797, at \*5-6 (where wife of injured claimant was not named as claimant on, nor signed, any claim form and provided no information in response to agency request, agency properly inferred that references in husband's claim to "consortium of wife" and "erectile dysfunction" referred only to his losses and not his wife's).

For these reasons and those presented in the government's opening brief, the information in Urizar-Mota's Administrative Claim was insufficient to put HHS on notice of the Reyes Plaintiffs' claims. *See Dynamic Image Techs.*, 221 F.3d at 40 ("Though prolix, [the plaintiff's administrative] claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it. To that extent, then, the amended complaint exceeded the scope of the administrative claim.").

The Reyes Plaintiffs do not even try to distinguish the plethora of cases against their position, *see* OB 19-26 & nn.7-8, and instead simply ignore them. RB 14-22. They nevertheless assert that Urizar-Mota's Administrative Claim supplied HHS with enough information to investigate the Reyes Plaintiffs' claims. But they cite no case finding that additional claimants have satisfied § 2675(a)'s notice requirement where, as here, the administrative claim failed to identify the additional claimants—much less their number, factual allegations supporting their claims, or the sum certain that they sought.

The cases that the Reyes Plaintiffs cite for the proposition that the derivative nature of a loss-of-consortium claim is legally sufficient to satisfy § 2675(a)'s notice requirement are either distinguishable or support the government's position.

*See* OB 19-24 & nn.7-8.[3] The bottom line is that in jurisdictions like Rhode Island,

which recognize loss of consortium as an independent cause of action, *see* OB 21-

23 & n.8, "a spouse may not presume that his or her own independent claim is au-

tomatically raised or implied in the administrative claim of the other spouse."

*DuPont v. United States*, 980 F. Supp. 192, 196 (S.D. W. Va. 1997); *see also, e.g.*,

---

[3]     The Reyes-Plaintiffs reference the following:

- *Hardiman v. United States*, 752 F. Supp. 52, 54 (D.N.H. 1989) (cited at RB 21) (denying R. 12(b)(1) motion; spouse "was specifically identified as a claimant on the form");

- *Dukert v. United States*, No. 14-cv-506, 2016 WL 10721258, at *5-7 (D.N.M. Jan. 5, 2016) (cited at RB 21) (granting R. 12(b)(1) motion given omission of wife's loss-of-consortium claim from administrative claim); *id.* at *6 (" Proof of the close familial relationship required for a loss of consortium claim has nothing to do with the presentation of facts supporting such a claim.");

- *Lopez v. United States*, 758 F.2d 806, 809-10 (1st Cir. 1985) (cited at RB 15, 16, 21) (government conceded notice);

- *Loper v. United States*, 904 F. Supp. 863, 866 (N.D. Ind. 1995) (cited at RB 21) (under circumstances of case, "a single SF 95 identifying both spouses as claimants and bearing signatures of both spouses complies with jurisdictional requirements" of § 2675(a) even though loss-of-consortium claim was not separately described);

- *Boyce*, 942 F. Supp. at 1223-24 (cited at RB 21) (notice sufficient where, in response to agency's letter to counsel asking for information supporting wife's potential loss-of-consortium claim, wife submitted affidavit providing facts supporting claim);

- *GAF Corp. v. United States*, 818 F.2d 901, 917-23 (D.C. Cir. 1987) (cited at RB 21) (where there was no question about plaintiffs' identity or nature of their claims, court noted that FTCA claimant's duty was to provide notice, not to substantiate claim).

In this case, by comparison, no one ever identified the Reyes Plaintiffs as claimants pre-suit.

*Burke*, 2017 WL 432536, at *4 (administrative claim form that "identifies [wife] as the sole claimant, bears only her signature, and describes only her injuries as a result of her fall[,]" and which does not mention husband by name even though it discloses wife's marital status, "gives no hint" to agency that husband is pursuing consortium claim).

Based on unsupportable inferences and pure speculation, the Reyes Plaintiffs have assumed that HHS was obligated under the FTCA to investigate whether loss-of-consortium claims existed even if the Reyes Plaintiffs never presented an administrative claim to the agency. No case law supports that argument. *See* OB 17-26. And that contention, if adopted, would improperly shift the burden to prove a waiver of sovereign immunity onto the government itself—an interpretation of § 2675 that even the authorities cited by the Reyes Plaintiffs recognize would be unprecedented. *See, e.g.*, *Santiago-Ramirez*, 984 F.2d at 18 (cited at RB 5, 12, 15-16, 19) ("Section 2675 [of the FTCA] *requires that the potential plaintiff give notice to the government . . . .*") (emphasis added); *GAF Corp.*, 818 F.2d at 919 (cited at RB 21) ("[T]he presentment requirement [of § 2675(a)] *imposes on claimants a burden of notice . . . .*") (emphasis added).

Compounding their error, the Reyes Plaintiffs also argue that HHS "suffered no prejudice" from their insufficient Administrative Claim. RB 22. The Reyes Plaintiffs add that HHS's "investigation would have been identical whether the Reyes Plaintiffs filed their own forms or not." RB 22. Their contention—for which they again cite no supporting case law—overlooks the jurisdictional nature of the FTCA: Regardless of form, the information a claimant timely presents to the

federal agency is either sufficient, which allows the claim to proceed, or it is not, which forever bars the claim. 28 U.S.C. § 2401(b).

There is no room under this standard, and certainly no precedential support, for the Reyes Plaintiffs' post hoc reasoning, their proposed consideration of governmental "prejudice," or their conjecture about how HHS might have conducted its investigation had the Reyes Plaintiffs supplied HHS with sufficient information in a timely fashion. *See Lopez*, 758 F.2d at 810 ("Since the government did not seek an elaboration of the claim, . . . appellant's compliance with the jurisdictional [notice] requirements must stand or fall on only his original claim form.").

To deem the meager amount of information the Reyes Plaintiffs provided to HHS sufficient to satisfy § 2675(a) runs counter to the bedrock principle that the FTCA's waiver of sovereign immunity must be strictly construed. The waiver of sovereign immunity is not intended to be "an open-ended panacea for would-be claimants." *Dynamic Image Techs.*, 221 F.3d at 39. Although the First Circuit's test for the adequacy of § 2675(a) notice may be flexible, it is not infinitely elastic. *See, e.g.*, *Santiago-Ramirez*, 984 F.2d at 20 ("[A]ppellant's claim is limited to the information she included in the [claim] letter. In other words, she alone, *and not her husband or the conjugal partnership*, may bring a claim for damages.") (emphasis added). The Court should therefore decline the Reyes Plaintiffs' invitation to dilute § 2675(a)'s notice requirements and should reverse the district court's denial of the Defendants' motion to dismiss.

**II.    Plaintiffs supply no evidence or authority to cure the district court's error in awarding Urizar-Mota lost-wages damages that she never sought and whose calculation the trial record does not support.**

In five distinct ways, Urizar-Mota's responsive brief reinforces the government's arguments that this Court should reverse the district court's erroneous award of $2.9 million in damages to her for the lost value of her homemaker services.

First, the Rhode Island statute on which the district court based its erroneous award permits a homemaker to "recover the fair value of homemaker services provided to the home and those living therein" as a remedy in a personal-injury lawsuit. 9 R.I. Gen. Laws § 9-1-47. But Urizar-Mota fails to cite any instance in which she invoked that statute before the district court, an omission underscoring her waiver of any right to recover under it. *Town of Portsmouth. v. Lewis*, 813 F.3d 54, 61 (1st Cir. 2016) ("[W]e need not consider a remedy first raised on appeal . . . ."); *see also, e.g.*, *Rodríguez v. Mun. of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) ("It should go without saying that we deem waived claims not made . . . .").

Second, solely based on boilerplate language in her district court complaint seeking "whatever further relief" that the district court might find "appropriate," Urizar-Mota nevertheless contends that she did not waive her claim for homemaker services. RB 23. This revisionist history ignores the multiple times during district court proceedings that Urizar-Mota either failed to specifically seek recovery under this statute or expressly disclaimed any economic damages beyond her medical expenses:

- in her district court complaint, which never invoked the statute, [G.App.1 12-30];

- in her discovery responses, which limited economic damages exclusively to her medical expenses, [G.App.1 2092-2093];

- in pre-trial correspondence, [G.App.1 134-135], and her final, pre-trial memorandum, [G.App.1 109], where she declined to supplement her discovery responses and reaffirmed that her only economic damages were her medical expenses; and

- in her post-trial proposed findings of fact and conclusions of law, where she conceded she "did not make a claim for loss of earning capacity," [G.App.1 2363].[4]

The law forecloses Urizar-Mota's position that the district court could simply have ignored her own admissions narrowing the scope of the damages she sought: "Generally speaking, a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding. And an admission of counsel during trial is binding on the client if, in context, it is clear and unambiguous." *Lima v. Holder*, 758 F.3d 72, 79 (1st Cir. 2014) (cleaned up; citations omitted); *Birbara v. Locke*, 99 F.3d 1233, 1237 (1st Cir. 1996) (same). And, because Urizar-Mota has not even tried to explain why she should not be bound by her own admissions, she has further waived any argument about this issue. *E.g.*, *Rodríguez*, 659 F.3d at 175; *Pan v. Gonzalez*, 489 F.3d 80, 87 (1st Cir. 2007) ("[L]egal theories advanced in skeletal form, unaccompanied by some developed argumentation, are deemed abandoned."); *United States v. Zannino*, 895 F.2d

---

[4] Urizar-Mota contends, incredibly, that she "never disclaimed or disavowed damages for [her] loss as a homemaker," and that "loss of earning capacity" and her homemaker losses "are separate and distinct." RB 25. She does not explain the distinction or why it should matter. Regardless, even when invited repeatedly by the government to enumerate both the types of economic damages she sought and to calculate their respective amounts, she never mentioned, let alone enumerated, the alleged value of her homemaker services.

1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Third, Urizar-Mota invokes Federal Rule of Civil Procedure 54(c), RB 24-25, which authorizes federal courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." She cites no authority involving any circumstances at all, much less in circumstances analogous to this case, in which a district court properly awarded damages that the plaintiff never asked for (much less waived). Nor does she try to distinguish the government's authorities. Instead, although she cites *Town of Portsmouth*, she does so only to restate what Rule 54(c) says. RB 24-25.

In that case, however, this Court held that the Town of Portsmouth had "foregone any entitlement" to its restitution claim because the Town had argued that "the restitution claim stands or falls" with injunctive and declaratory claims that the Court had held were moot. 813 F.3d at 61-62. In other words, this Court bound the Town to its litigation position—a holding that only reinforces HHS's position that Urizar-Mota has waived her claim for homemaker services.

Fourth, as the government pointed out in its opening brief, the trial record lacks any evidence supporting the district court's calculation of the *value* of Urizar-Mota's lost homemaker services. OB 30-32. Urizar-Mota concedes the point by stating that the same evidence proving her pain and suffering (which was devoid of *economic* value) proves her economic losses. RB 27. And the case law she references relaxing the quantum of proof does so only for *non*-economic damages. RB 27-28. Neither of her cited cases delegate to fact-finders' "judgment and

. . . experience," the calculation of economic damages, much less where (as here) there is no record evidence to support any calculation at all. *Bruno v. Caianiello*, 121 R.I. 913, 916-17, 404 A.2d 62, 64-65 (1979) (cited at RB 27) (assessing only pain-and-suffering damages, a concept repeated seven times in this cited portion); *Worsley v. Corcelli*, 119 R.I. 260, 268, 377 A.2d 215, 219 (1977) (cited at RB 28) (assessing propriety of per diem method of calculating "damages for pain and suffering").

Finally, Urizar-Mota baldly asserts that the government suffered no prejudice. RB 6-7, 24-25. Had Urizar-Mota affirmatively sought such damages, however, the government would have cross-examined her (and her daughter) about the extent of her homemaker services, which, even before her injuries, almost certainly could not have consumed 40 hours of every single week. And the government also would have retained other experts to opine—contrary to the district court's pure speculation—that no one, much less Urizar-Mota, would continue to provide homemaker services for the same number of weekly hours decades after her children grew up and well into her 80s.

In short, neither law nor fact supports the district court's $2.9 million award to Urizar-Mota for the loss of the value of her homemaker services. This Court should reverse that award.

## III. Plaintiffs' opposition arguments fail to negate the district court's errors concerning causation and its resulting damage awards.

### A. No record evidence supports the district court's conclusion that Urizar-Mota's tumor could have been treated without surgery.

The district court erred by finding that, had Urizar-Mota's tumor been detected in 2017 or 2018, she would have avoided surgery altogether as well as the damages associated with it. [G.Add. 33]; OB 34-36. The parties' experts unanimously concluded that the only available treatment for Urizar-Mota's brain tumor—whenever detected—was surgery. OB 34 (citing expert testimony).[5] The district court clearly erred when it overlooked the admissions of Plaintiffs' own experts about the inevitability of surgery.[6] The expenses related to surgery, its medical consequences and the cost of responding to them, and Urizar-Mota's post-surgical pain and suffering therefore lacked sufficient factual foundation to justify the court's award of damages.

Plaintiffs make three arguments to try to support the district court's erroneous conclusions. None identifies any contrary, competent record evidence that

---

[5]    Plaintiffs' expert neuro-oncologist, Dr. Ashley, repeatedly re-affirmed in his trial testimony what his pre-trial disclosure stated: were Urizar-Mota's tumor detected "in 2012, *or anytime thereafter*, it is more likely than not that *her treatment would have consisted of a surgical resection of the tumor*," [G.App.1 1967 (emphases added)]. For example, at trial, Ashley:

- described surgery as "the *very best option*," [G.App.1 833 (emphasis added)]; and

- opined that "we would *always* consider a *complete surgical removal as the first step*, and—and the best surgical—*the best therapeutic standard*," [G.App.1 975 (emphases added)].

[6]    *See, e.g.*, *Lima*, 758 F.3d at 79; *Birbara*, 99 F.3d at 1237; *cf. Glendale Fed. Bank, FSB v. United States*, 39 Fed. Cl. 422, 424-25 (1997).

justifies the district court's disregard of the unanimous testimony of the parties' experts about Urizar-Mota's need for surgery.

First, Plaintiffs contend that the government "never moved to exclude" the only expert to testify about non-surgical treatment, Plaintiffs' expert neuro-oncologist Dr. David Ashley. RB 28 n.2. That is false. The government objected to Dr. Ashley's testimony about non-surgical treatments both before trial, [G.App.1 128-131], and after trial, [G.App.1 2193].

Second, Plaintiffs admit they cannot meet the applicable standard of proof. They concede that non-surgical treatment was a mere possibility[7]—not, as Rhode Island law requires, that it was the *probable* treatment at any time between 2017 and 2019.[8] *See Almonte v. Kurl*, 46 A.3d 1, 21 (R.I. 2012) (noting that to carry burden on causation, plaintiff must "present[ ] an expert to show . . . probability, not a mere possibility"). Plaintiffs are forced to concede the point because of another fatal gap in the record: not even Dr. Ashley testified that non-surgical treatment comprised standard treatment. The only treatment he characterized as "standard" was surgery. [G.App.1 990]. Plaintiffs also ignore (as the district court erroneously did) the salient predicate Dr. Ashley identified for non-surgical treatment: that the

---

[7]     RB 28 (point heading contending Urizar-Mota "*May Have* Avoided Surgery") & 32 ("adjuvant [*i.e.*, non-surgical] treatment *may have* been used") (emphases added).

[8]     Putting aside Dr. Ashley's admissions that surgery was always Urizar-Mota's first-line treatment, *e.g.*, n.5 *supra*, Plaintiffs further expose the clear error of the district court's findings about non-surgical treatment—or at least its possible use in *2017*—by contending that Dr. Ashley would have recommended surgery as the sole remedy through *2018*. RB 36.

patient's tumor "can't be surgically removed," [G.App.1 1019][9]—an undisputed

counterfactual because Urizar-Mota's tumor *was* fully removed by surgery,

[G.App.1 1017].

Finally, Plaintiffs vainly try to undo their explicit stipulation that

"Urizar-Mota would have needed . . . [s]urgery to resect the tumor" by contending

that they agreed to the stipulation only to explain expenses for which they were not

seeking compensation. RB 33.[10] The logical conclusion of this stipulation only

supports the government's appeal. Plaintiffs' alleged contrary intent is neither re-

flected in the stipulation itself nor in the trial record.

### B. No competent evidence supports the district court's conclusions about the risks posed by delayed surgery.

Plaintiffs' sole theory of liability was that the risk of Urizar-Mota's surgery

and the injuries she suffered because of that surgery were made greater by a de-

layed medical diagnosis. The district court erred by failing to assess the only com-

petent evidence offered by a brain surgeon—the government's expert Dr. Timothy

Smith—about the equivalent, inherent risks of removing a tumor from where

Urizar-Mota's was located, regardless of when that tumor was detected. *E.g.*, OB

36-37. The district court amplified its error in holding the government liable for

Urizar-Mota's injuries despite the court's conclusion—consistent with the parties'

---

[9]     *See also* [G.App.1 970 (Ashley) (testifying about use of non-surgical treat-
ment in 2019 on patients "where the tumor was incompletely resected or required
further intervention"); G.App.1 989 (Ashley) (affirming non-surgical treatments
would apply only after "biopsy or resection")].

[10]     *See* n.6 *supra*.

unanimous expert testimony—that strokes occurring during surgery, rather than anything the government did, caused her most significant physical injuries. *E.g.*, OB 37-38; [G.Add. 17].

Plaintiffs' arguments trying to show that the district court did not err are untethered to the record evidence. First, Plaintiffs sidestep their own non-surgical experts' concessions that they defer to brain surgeons in assessing surgical risk. OB 36; [G.App.1 732, 784-787, 792-793, 986-987, 1047-1048]. Plaintiffs cite an evidentiary rule and case law that allows a factfinder to consider physician testimony about subjects outside of their specializations. RB 34. But none of those cases goes as far as the testimony of Plaintiffs' non-surgical experts, who affirmatively prioritized surgeons' assessment of surgical risk over their own.[11]

Second, citing only Dr. Ashley, Plaintiffs argue that Urizar-Mota's surgery on June 24, 2019, was inherently riskier in part because of her presentation with acute hydrocephalus five days earlier. RB 36-38.[12] But the record reflects that Urizar-Mota went into surgery on June 24 *because* her acute hydrocephalus had resolved. [G.App.1 756, 766-768, 1396-1397, 1401-1402, 1428, 1512-1513, 1525].

---

[11]     [G.App.1 732 (Caplan) (responding in part to question about difficulty of surgery on tumor in location of Urizar-Mota's tumor, over Plaintiffs' counsel's objection that "*[h]e's not a surgeon*," that "*I don't know how easy [surgeons] find it*") (emphases added); G.App.1 1047 (Ashley) (testifying that, as part of interdisciplinary treatment team, "*[f]irst thing is, it would be the surgeons who are advising her of risk benefit [sic] of the surgery*") (emphasis added)]; *see also* n.13 *infra*.]

[12]     Notably, the bulk of Plaintiffs' record citations address Urizar-Mota's condition on June 19, 2019, [*e.g.*, Appellees' App., Trial Ex. 3 (medical record for June 19, 2019, only)]—not her condition as of June 24, 2019, the date she underwent surgery.

There is no record evidence of—or even attorney argument about—any need to rush Urizar-Mota into surgery on June 24. And if that rush had, in fact, made her condition "less than ideal" for surgery—the thrust of Dr. Ashley's opinion about her increased surgical risk, [G.App.1 957]—Plaintiffs' criticisms are about the decisionmaking of Urizar-Mota's private surgeons at Rhode Island Hospital, not of her primary-care providers whom the United States represents.

Given Plaintiffs' admissions, RB 54, it is now clear that absolutely everyone agrees Urizar-Mota experienced surgical strokes that caused her permanent injuries: the consensus is predicated upon the opinions of both parties' experts, [G.App.1 738-739, 750, 753-755, 964-966, 998-1000, 1040-1041, 1365, 1389, 1395, 1401-1402, 1406-1409, 1413, 1416-1418], the district court, [G.Add. 17], and the government, OB 37-38. Plaintiffs identify no record evidence, moreover, that connects these surgical strokes to any diagnostic delay.

Finally, Plaintiffs simply re-assert the same points that formed the basis of the district court's erroneous surgical-risk findings: (1) that, somehow, Urizar-Mota's surgery could have been bloodless, even though no surgery is, *compare* RB 40[13] *with* OB 36; and (2) that operating on a smaller tumor would have posed net fewer risks, even though Plaintiffs failed to rebut Dr. Smith's testimony that the risks of damaging healthy brain tissue are greater for smaller tumors than for larger ones, *compare* RB 8, 35, 38 *with* OB 36-37. The only new wrinkle about the supposed increased risk of surgery on a larger tumor that Plaintiffs offer on

---

[13] In opining about this issue, Dr. Caplan added, "I don't want to speak for surgeons in a court case . . . ." [G.App.1 792].

appeal is the agreement of Doctors Ashley and Smith that the rate of permanent injuries from surgery on tumors in Urizar-Mota's location is ten percent. RB 8, 35, 42, 45, 55. But neither expert connected that rate to a tumor's size (a proxy for time) or a delayed diagnosis.

### C. In the absence of any expert testimony about Urizar-Mota's medical expenses, the district court clearly erred in awarding them.

Plaintiffs address neither of the government's principal arguments on appeal concerning the district court's clear errors in awarding medical expenses. They therefore concede both issues, and this Court should reverse the district court's award of medical expenses to Urizar-Mota.

First, before trial, Plaintiffs designated no expert to make the connection between the injuries allegedly caused by Urizar-Mota's delayed diagnosis and the medical bills corresponding to treatment necessitated solely by a delayed diagnosis. The case law requires such pre-trial disclosures and, thus, the district court's failure to grant the government's pre-trial motion in limine to exclude Plaintiffs' expert testimony about Urizar-Mota's medical expenses was erroneously denied. OB 39-40. Plaintiffs' responsive brief cites no authorities contrary to those cited in the government's brief, does not attempt to distinguish the government's authorities, and points to no pre-trial disclosure by any expert on this subject.

Second, by failing to address the point, Plaintiffs have apparently conceded that they introduced no expert witness to testify (or be cross-examined) about their summary chart of allegedly compensable medical expenses. Similarly, their silence also reflects an admission that they presented no evidence about who prepared the

summary chart or how its author selected which expenses to include or to exclude. OB 38-40. In the absence of any contrary evidence, the only reasonable inference is that Plaintiffs' counsel created the chart. The district court clearly relied on the chart, as it adopted Plaintiffs' counsel's medical-expense arguments (consistent with their calculations on the summary chart) nearly to the dollar. OB 38.

Plaintiffs cite no authority permitting a court to accept an attorney's argument as expert evidence on damages in a medical malpractice case. Yet that is the very license that Plaintiffs ask this Court to grant in seeking to preserve the district court's erroneous ruling on medical expenses.

Proof of medical expenses is obviously a damages issue on which Plaintiffs bear the burden of proof. Plaintiffs try in vain to relieve themselves of their burden by relying on the proposition that parties may prove *liability* by circumstantial evidence. *E.g.*, RB 49 (citing *Kurczy v. St. Joseph Veterans Ass'n*, 713 A.2d 766, 771 (R.I. 1998)); *Kurczy*, 713 A.2d at 771 ("[N]egligence and proximate cause can be established by circumstantial evidence, and specific direct evidence of negligence and proximate cause is not always necessary."). In the same vein, Plaintiffs attempt to identify expert evidence on *damages* by relying on substantially redundant record citations to *causation* issues—none of which any expert tied to any of Urizar-Mota's actual medical bills, whether through a summary chart or otherwise.[14] RB 49-61.

---

[14] The government's case law on this point is precisely as Plaintiffs characterize it, *and* it describes Plaintiffs' own trial presentation in this case: "The plaintiffs in the cases cited by the government did not have any experts to testify to the

## IV. Plaintiffs' appellate arguments reinforce the clear error of the district court's standard-of-care findings.

The most significant clear error about the standard of care that the government's appeal identifies, *e.g.*, OB 42-46, is the district court's conclusion, based solely on Plaintiffs' primary-care expert, Dr. Russell Phillips, that any red flag at all accompanying a headache compels imaging:

> The standard of care, in 2012 through 2019, for a reasonably competent primary care nurse practitioner or physician treating a patient with headaches requires that the primary care nurse practitioner or physician order neuroimaging of the patient if the patient has any "red flags." The patient's headache needs only be accompanied by or associated with one "red flag" to call for neuroimaging.

[G.Add. 22].

Plaintiffs underscore the merit of the government's appeal by piling up their own contradictions in their futile attempt to justify Dr. Phillips' repeatedly contradictory trial testimony.

Dr. Phillips proposed the bright-line standard of care that the district court adopted. OB 42; [G.App.1 383-384]. He identified, and the district court adopted, 15 red flags that he opined mandate a referral to a neurologist or to a brain scan when a patient presents with one of those red flags and a headache. [G.Add.22; G.App.1 371-372, 378-379, 2109, 2111]. In their appellate brief, Plaintiffs stress that "no one red flag is more important than the other." RB 69 n.9. Yet, when confronted at trial with multiple visits Urizar-Mota made to her primary-care providers with a headache and one of these red flags (*e.g.*, pregnancy), Dr. Phillips opined

---

medical records and bills they sought to introduce or otherwise connect the expenses to the alleged negligence." RB 49 n.5.

that the standard of care did *not* compel imaging. [G.App.1 1187-1195, 1199-1201].

Plaintiffs appellate contradiction of the trial record means one of two things. First, if the relevant protocol has exceptions, it simply cannot be the standard that *every* red flag compels imaging. Second, even if an iron-clad rule *were* the standard of care, Dr. Phillips applied it inconsistently by making exceptions to its application.

In their responsive brief, Plaintiffs apparently concede that that the first point—that not every flag compels imaging—is true: they advocate for an exception-laden, flexible, totality-of-the-circumstances standard. They thereby replicate the incoherence, implausibility, and unreliability of Dr. Phillips' testimony and the district court's clear error in relying on it:

> The government also suggests that Dr. Phillips applied the standard of care inconsistently by opining that imaging was not required when Ms. Urizar-Mota presented with headaches prior to 2012. In doing so, *the government ignored the reasonable explanation for Ms. Urizar-Mota's symptoms at the time, and ignored Dr. Phillips testimony on how the pre-2012 visits and corresponding symptoms were distinguishable [from] Ms. Urizar-Mota's 2012 and forward visits* and corresponding red flags that required neuroimaging.

RB 66 (emphasis added). Plaintiffs implicitly admit that the standard of care for which they advocated at trial, and that the district adopted, cannot survive either Dr. Phillips' or Plaintiffs' own contradictions. Plaintiffs' admission compels complete and final judgment for the United States.

## CONCLUSION

For the reasons presented in the government's opening brief and herein, the Court should: (1) vacate the $3.5 million award to the Reyes Plaintiffs, as their mother's claim never identified them or their claims and, thus, failed to establish the district court's subject-matter jurisdiction over their claims; (2) vacate the $2.92 million award to Urizar-Mota for the lost value of homemaker services that Plaintiffs waived and that the district court calculated based on unreasonable assumptions; (3) vacate the district court's clearly erroneous findings on causation and, in turn, the awards to Urizar-Mota based on medical expenses (in the amount of $662,194.62) and post-diagnosis pain and suffering (in the amount of $6,387,500) that depended solely on those erroneous causation findings; and (4) vacate the district court's clearly erroneous standard-of-care findings and thereby enter judgment in full for the United States.

Dated: December 15, 2025

Respectfully submitted

THE UNITED STATES OF AMERICA

By its attorneys,
SARA MIRON BLOOM
First Assistant United States Attorney

*/s/ Kevin M. Bolan*
*/s/ Lauren S. Zurier*
KEVIN M. BOLAN
LAUREN S. ZURIER
Assistant United States Attorneys
One Financial Plaza, 17th Floor
Providence, RI 02903
401.709.5000
401.709.5001 (fax)
kevin.bolan@usdoj.gov
lauren.zurier@usdoj.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it comprises 5,592 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and the Court, on December 1, 2025, issued an order granting the government's motion for leave to file an oversized brief containing no more than 8,000 words.

This brief also complies with the typeface size and style rules in, respectively, Fed. R. App. P. 32(a)(5) and (a)(6) by using a proportionally spaced, serif, 14-point typeface (*i.e.*, Times New Roman).

Dated: December 15, 2025                */s/ Lauren S. Zurier*
                                        Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that, on December 15, 2025, I caused the foregoing document to be filed electronically and that it is available for viewing and downloading from the ECF system. The ECF system will serve a copy of the foregoing document on plaintiffs' appellate counsel:

>       Amato A. DeLuca, Esq.
>       Katelyn M. Revens, Esq.
>       DeLuca, Weizenbaum, Barry & Revens, Ltd.
>       199 North Main St.
>       Providence, RI 02903
>       bud@dwbrlaw.com
>       kate@dwbrlaw.com

Dated: December 15, 2025                */s/ Lauren S. Zurier*
                                        Assistant United States Attorney